US DISTRICT COURT INDEX SHEET

















LLH    3/9/00     9:43

3:00-CV-372 GIBSON V. PS GROUP HOLDINGS

*15*

*O*

FILED

MAR  8 2000

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

1

2

3

4

5

6

7

8

9

10

11 UNITED STATES DISTRICT COURT

12 SOUTHERN DISTRICT OF CALIFORNIA

13                                      STATE COURT: GIC740874

14 ROBIN GIBSON, On Behalf of          CASE NO: 00-CV-0372 W (RBB)
   Himself and All Others Similarly
15 Situated,                           **MEMORANDUM OPINION
                                       AND ORDER REMANDING
16                        Plaintiff,   ACTION TO STATE COURT**

17

18       v.

19 PS GROUP HOLDINGS, INC.,
   WILLIAM S. BORTHWICK,
20 STEVEN D. BROIDY, J.P.
   GUERIN, DONALD W. KILLIAN,
21 JR., CHRISTOPHER H.B. MILLS,
   CHARLES E. RICKERSHAUSER,
22 JR. et al.,
23

24                        Defendants.

25

26       Before the Court is a motion to remand filed by Plaintiff Robin Gibson.

27 Plaintiff contends that Defendants improperly removed this action to federal court

28 under the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353,

112 Stat. 3227.  The Court has read and considered Plaintiff's motion to remand, Defendants' opposition, Plaintiff's reply, Defendants' sur-reply, all attached exhibits and the applicable law.  For the reasons expressed below, the Court **GRANTS** Plaintiff's motion to remand.[1]

### I.  BACKGROUND

On December 27, 1999 Plaintiff Robin Gibson ("Plaintiff") commenced this action in San Diego Superior Court on behalf of himself and a class of shareholders and investors of Defendant PS Group Holdings, Inc. ("PS Group").  Plaintiff alleges that PS Group, its directors and officers breached their fiduciary duties in connection with a proposal by Integrated Capital Associates, Inc.'s ("ICA") to purchase all outstanding shares of PS Group's common stock at a price of $12.00 per share, or approximately $73 million (the "acquisition").  Plaintiff alleges that Defendants breached and continue to breach their fiduciary duties to Plaintiff and the class by failing to disclose material facts in connection with the acquisition, by allowing themselves to be influenced by factors other than the maximization of shareholder value, and by deterring the maximization of shareholder value by excluding competitive cash offers for PS Group.

On February 11, 2000 Defendants filed a Proxy Statement (the "proxy") with the Securities and Exchange Commission ("SEC") which sets a shareholder vote on the merger.  According to Plaintiff, the proxy contains various misrepresentations and omissions concerning the fairness of the proposed acquisition.  On February 18, 2000 Plaintiff filed an Amended Complaint which adds a claim for breach of the duty of candor based largely on the content of the proxy.

---

[1]    On the late afternoon of March 7, 2000 the parties contacted the Court and indicated that they had reached a tentative agreement to remand this matter to state court. Prior to receiving this notice, the Court had largely completed this order. The Court finds the parties' remand agreement moot insofar as this Court lacks subject matter jurisdiction over this dispute, and because this order accomplishes the parties' stated objectives.

1    On February 22, 2000 Defendants removed this action to federal court
2  pursuant to the Securities Litigation Uniform Standards Act of 1998, Pub. L. No.
3  105-353, 112 Stat. 3227 (the "Uniform Standards Act"), on the basis that the
4  Amended Complaint specifically alleges a violation of state law based on
5  misrepresentations or omissions made in connection with the purchase or sale of PS
6  Group's stock.  At all times relevant to this action, PS Group's stock was traded on
7  the New York Stock Exchange.  Plaintiff subsequently moved to remand this action
8  to state court.

9  II.   DISCUSSION

10    In seeking remand to state court, Plaintiff advances two primary arguments.[2]
11  First, Plaintiff contends that this action falls outside the removal and preemption
12  provisions of the Uniform Standards Act because Plaintiff seeks only equitable relief
13  and not an award of damages.  Second, Plaintiff argues that even if this action satisfies
14  the removal criteria of the Uniform Standards Act, the Act specifically exempts
15  breach of fiduciary duty claims alleging fraud in connection with a vote on a merger
16  or acquisition.  The Court will address each argument in turn.

17  1.   THE UNIFORM STANDARDS ACT

18    In 1995 Congress determined that meritless and abusive private securities
19  lawsuits were harming the nation's securities markets. H.R. Conf. Rep. No. 104-369,
20  at 31-32 (1995).  It responded by passing the Private Securities Litigation Reform Act
21  of 1995, Pub. L. 104-67, 109 Stat 737 (the "Reform Act").  The Reform Act enacted
22  tougher procedural and substantive standards for private securities suits in federal
23  courts.  Among other things, the Reform Act established heightened pleading
24  requirements, an automatic stay of discovery pending motions to dismiss and a safe
25  harbor for certain forward-looking statements. 15 U.S.C. §§ 78u-4, 77z-1.

26

27

28    [2]   Defendants do not contend that federal question jurisdiction or diversity of
citizenship provide a basis for removal of this action.

1    Three years later, Congress determined that class action attorneys were
2 attempting to circumvent the Reform Act's requirements by filing frivolous securities
3 lawsuits in state court and under state law, rendering virtually all of the Reform Act's
4 protections inapplicable.  Congress responded by enacting the Securities Litigation
5 Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (the "Uniform
6 Standards Act" or "Act").  Congress expressly found that "a number of securities class
7 action lawsuits have shifted from Federal to State courts," and that "this shift has
8 prevented [the Reform Act] from fully achieving its objectives."  See Uniform
9 Standards Act § 2(1)-(3).  Congress concluded that "to prevent [these] State private
10 securities class action lawsuits ... from being used to frustrate the objectives of the
11 [Reform Act], it is appropriate to enact national standards for securities class action
12 lawsuits involving nationally traded securities, while ... not changing the current
13 treatment of individual lawsuits." Id. § 2(5).
14    The Uniform Standards Act resolves these problems by foreclosing the option
15 of filing class actions in state court or under state law.  See H.R. Conf. Rep. No.
16 105-803, at 13-15 (1998).  The general preemption provision of the Act broadly
17 precludes class actions under state law where they allege facts actionable under the
18 federal securities laws:

19
20    (b) CLASS ACTION LIMITATIONS. – No covered class action
     based upon the statutory or common law of any State or subdivision
21   thereof may be maintained in any State of Federal court by a private
     party alleging –
22       (1) an untrue statement or omission of a material fact in
23       connection with the purchase or sale of a covered security...

24 15 U.S.C. §§ 77p(b), 78bb(f)(1).  The next paragraph of the Act authorizes the
25 removal of such class actions from state court to federal district court:
26 //
27
28

                                    -4-                          00cv0372

1
2
3
4

(c) REMOVAL OF COVERED CLASS ACTIONS. – Any covered class action brought in any State court, involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

5   15 U.S.C. §§ 77p(c), 78bb(f)(2).  Taken together, these provisions authorize the
6   removal and subsequent dismissal of any (1) "covered class action," (2) based on state
7   law, (3) that alleges an "untrue statement or omission of material fact in connection
8   with the purchase or sale" (4) of a "covered security."

9        With the exception of the "covered class action" prerequisite, Plaintiff does not
10  dispute that this action satisfies these requirements.  The alleged misrepresentations
11  and omissions in PS Group's proxy qualify as statements made "in connection with
12  a purchase or sale" of a security because they relate to the challenged acquisition.  See
13  SEC v. National Securities, Inc., 393 U.S. 453, 467-68, 89 S.Ct. 564, 573, 21 L.Ed.2d
14  668 (1969) (statements made in connection with shareholder approval of a merger of
15  two companies qualify as statements made "in connection with the purchase or sale
16  of a security" under Section 10(b)).  PS Group's shares meet the Uniform Standards
17  Act's definition of a "covered security" because they were traded on the New York
18  Stock Exchange at the time the alleged misrepresentations and omissions occurred.
19  See 15 U.S.C. §§ 77p(f)(3), 78bb(f)(5)(B), 77r(b)(1)(A).  Finally, the claims alleged in
20  Plaintiff's initial and amended complaints arise exclusively under state law.

21       Plaintiff contends, however, that this action does not meet the definition of a
22  "covered class action," which the Uniform Standards Act defines to include any single
23  lawsuit in which "one or more named parties seek to recover *damages* on a
24  representative basis on behalf of themselves and other unnamed parties similarly
25  situated..."  15 U.S.C. §§ 77p(f)(2)(A)(I)(II), 78bb(f)(5)(B)(I)(II) (emphasis added).[3]
26

27      [3]    The Court notes that the Uniform Standards Act excludes from the definition
28  of a "covered class action" any "exclusively derivative action brought by one or more
    shareholders on behalf of a corporation." 15 U.S.C. §§ 77p(f)(2)(B), 78bb(f)(5)(C). Plaintiff

1 Plaintiff contends that because the currently operative Amended Complaint seeks
2 only equitable injunctive relief and not "damages," this action is not a covered class
3 action and therefore falls outside the removal provisions of the Uniform Standards
4 Act.

5 The procedural history of this case suggests that Plaintiff selectively omitted
6 the damages prayer from his Amended Complaint to defeat removal under the
7 Uniform Standards Act. Plaintiff's original state court complaint, which was not
8 removable under the Act, alleged a single claim for breach of fiduciary duty and
9 explicitly sought compensatory damages. Plaintiff subsequently filed an Amended
10 Complaint that added the duty of candor claim that made this action removable, but
11 removed the prayer for damages. Although Plaintiff asserts that he has never sought
12 a damages remedy, he offers no explanation for the inconsistencies between the two
13 complaints.

14 A rule allowing a class action plaintiff to defeat removal by filing an amended
15 complaint that omits a prayer for damages would eviscerate the Uniform Standards
16 Act. Under Plaintiff's theory, a class action plaintiff could file a state court complaint
17 seeking only injunctive and declaratory relief, avoid removal to federal court, pursue
18 massive discovery in state court, then amend its complaint at a later date to add a
19 prayer for compensatory damages. To avoid circumvention of the Reform Act, the
20 structure and legislative history of the Uniform Standards Act suggest that district
21 courts should construe the "covered class action" definition broadly to avoid giving
22 effect to such attempts at manipulation. The Senate Banking Committee Report, for
23 examples, makes this concept explicit:

24
25 [W]hile the Committee believes that it has effectively reached those
   actions that could be used to circumvent the reforms enacted by
26 Congress in 1995 as part of the Private Securities Litigation Reform
   Act, it remains the Committee's intent that the bill be interpreted
27

28 ───────────────────

does not argue that this exclusion applies here.

00cv0372

1
2
broadly to reach mass actions and *all other procedural devices that might be used to circumvent the class action definition.*

3 S. Rep. No. 105-182, at 8 (1998) (emphasis added). A rule that allows a plaintiff to
4 defeat a defendant's right to remove a class action through such a hollow procedural
5 maneuver would surrender the Uniform Standards Act's application to the class
6 action plaintiffs the statute seeks to keep at bay. The Uniform Standards Act
7 therefore demands that the Court look beyond the face of the Plaintiff's pleadings to
8 discern whether this action is a "covered class action." Because Plaintiff has offered
9 no explanation for dropping the request for damages from his Amended Complaint,
10 the Court finds no reason why this action should not qualify as a "covered class
11 action" under the Uniform Standards Act.

12          **2.   THE DELAWARE CARVE-OUT**

13          Plaintiff next contends that even if this action satisfies the general removal
14 criteria of the Uniform Standards Act, it falls within an exception known as the
15 "Delaware carve-out." Malone v. Brincat, 722 A.2d 5, 13 (Del. 1998). The exception
16 permits plaintiffs to bring class action lawsuits where a corporation or its principals
17 breach a fiduciary duty of disclosure to existing shareholders. The "Delaware carve-
18 out" provides in pertinent part:

19
20          (d)   PRESERVATION OF CERTAIN ACTIONS.-

21          (1)   ACTIONS UNDER STATE LAW OF STATE OF
22                INCORPORATION.-

23                (A) ACTIONS PRESERVED. - ... [A] covered class action
24                described in subparagraph (B) of this paragraph that is based
                  upon the statutory or common law of the State in which the
25                issuer is incorporated ... may be maintained in a State or Federal
26                court by a private party.

27                (B) PERMISSIBLE ACTIONS. - A covered class action is
28                described in this subparagraph if it involves-

* * *

    (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that--

        (I) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and

        (II) concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. §§ 77p(d)(1), 78bb(f)(3)(A). If a federal court determines that a class action is "preserved" under this section, the Uniform Standards Act requires remand to state court. 15 U.S.C. §§ 77p(d)(4), 78bb(f)(3)(D).

    Defendants do not dispute that this action meets these requirements. This action arises out of Defendants' alleged breach of fiduciary duty, including the duty of disclosure to PS Group shareholders. Plaintiff accuses Defendants of breaching their duty of candor by omitting material facts from the proxy which solicits shareholder votes on the challenged acquisition. The pleadings and temporary restraining order filed in state court confirm that Plaintiff brought this action based upon the law of Delaware, PS Group's state of incorporation. In short, this action clearly meets the statutory requirements of the Delaware carve-out.

    Defendants argue, however, that the legislative history of the Uniform Standards Act establishes that the Delaware carve-out applies only when a plaintiff brings a class action in the issuer's state of incorporation. Defendants point to a footnote in the House Conference Committee Report which states:

    The legislation provides for certain exceptions for specific types of actions. The legislation preserves State jurisdiction over (1) certain actions that are based upon the law of the State in which the issuer of

the security in question is incorporated, [FN2] ...

      [FN2] It is the intention of the managers that the suits under this exception be limited to the state in which the issuer of the security is incorporated ...

H.R. Conf. Rep. No. 105-803, at 13-14 & n.2 (1998). Similar statements appear in an earlier Senate Banking Committee Report:

      [T]he Committee expressly does not intend for suits excepted under this provision to be brought in venues other than the issuer's state or incorporation ...

S. Rep. No. 105-182, at 6 (1998).  Defendants reason that because PS Group is incorporated in Delaware and Plaintiff filed suit in California, this action does not come within the Delaware carve-out.

    Federal courts vary on the value of legislative history as a tool of statutory interpretation.  Compare Conroy v. Aniskoff, 507 U.S. 511, 519, 113 S.Ct. 1562, 1567, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring) ("If one were to search for an interpretative technique that, *on the whole*, was more likely to confuse than to clarify, one could hardly find a more promising candidate than legislative history."); Lindahl v. Office of Personnel Management, 470 U.S. 768, 810, 105 S.Ct. 1620, 1643, 84 L.Ed.2d 674 (1985) (White, J., dissenting) ("Resort to legislative history will always be a necessary tool of statutory construction, and the circumstances under which courts should turn to legislative history and the weight to be accorded particular sources of history cannot be prescribed by inflexible canons of construction.").  The Supreme Court has, however, reached a consensus on two basic principles.  First, federal courts should resort to legislative history only when necessary to resolve statutory ambiguity.  Barnhill v. Johnson, 503 U.S. 393, 401, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992).  The corollary to this rule, therefore, is that "[l]egislative history is irrelevant to the interpretation of an unambiguous statute."  Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 808 n.3, 109 S.Ct. 1500, 1504 n.3, 103

1    L.Ed.2d 891 (1989).  As a second and related principle, federal courts have no
2    authority to "give[] authoritative weight to a single passage of legislative history that
3    is in no way anchored in the text of the statute." <u>Shannon v. United States</u>, 512 U.S.
4    573, 583, 114 S.Ct. 2419, 2426, 129 L.Ed.2d 459 (1994); <u>United States v. Gonzalez</u>,
5    520 U.S. 1, 6, 117 S.Ct. 1032, 1035-36, 137 L.Ed.2d 132 (1997) (same).  In other words,
6    "courts have no authority to enforce a principl[e] gleaned solely from legislative
7    history that has no statutory reference point." <u>Shannon</u>, 512 U.S. at 583-84, 114 S.Ct.
8    at 2426 (quoting <u>International Brotherhood of Elec. Workers, Local Union No. 474,</u>
9    <u>AFL-CIO v. NLRB</u>, 814 F.2d 697, 712 (D.C. Cir. 1987)) (alterations in original).

10       Giving dispositive effect to the two snippets of legislative history identified by
11   Defendants would contravene both of these principles.  Although the Delaware
12   carve-out clearly limits preserved actions to those that are "based upon the statutory
13   or common law of the State in which the issuer is incorporated," the statute provides
14   that such actions "may be maintained in a State or Federal court by a private party."
15   15 U.S.C. §§ 77p(d)(1)(A), 78bb(f)(3)(A)(I).  Nothing in this language suggests that
16   Congress intended to restrict the venue of preserved class actions to the issuer's state
17   of incorporation.  The Court finds nothing in this language susceptible to
18   clarification or interpretation by either the House Conference or Senate Banking
19   Committee Reports.  Had Congress intended to impose a restriction on the venue
20   of actions preserved by the Delaware carve-out, it could have done so in the language
21   of the statute.  This it did not do.

22       The Court therefore finds the language of the Delaware carve-out unambiguous
23   as to its lack of a venue restriction, and declines to give legal effect to unenacted
24   statements in the legislative history.  Because Plaintiff's action meets the requirements
25   of the Delaware carve-out, the Court must remand this action to state court.  15
26   U.S.C. §§ 77p(d)(4), 78bb(f)(3)(D).
27   //
28

- 10 -

00cv0372

III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand and **REMANDS** this case to San Diego Superior Court.  The Clerk of Court shall close the district court case file.

**SO ORDERED.**

DATE: March 8, 2000

Judge THOMAS J. WHELAN
United States District Court
Southern District of California

CC:   ALL PARTIES
      RUBEN B. BROOKS, UNITED STATES MAGISTRATE JUDGE

- 11 -

00cv0372